UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAKA SHABAZZ, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | Case No. 3:17cv904(KAD) |
| | : | |
| SCOTT SEMPLE, ET AL., | : | |
|     Defendants. | : | |

## **INITIAL REVIEW ORDER**

**Preliminary Statement**

The plaintiff, Shaka Shabbaz ("Shabazz"), recently updated his address to reflect that he is no longer at a halfway house and is currently confined at the Osborn Correctional Institution. He initiated this action by filing a civil rights complaint against Acting District Two Lead Warden Jose Feliciano, District Two Lead Warden Peter Murphy, Commissioner Scott Semple, Deputy Commissioners Cheryl Cepelak and Monica Ellison, Deputy Warden Robert Martin, Lieutenant Limmer, Correctional Officer Judy and Ms. Surfus. *See* Compl., ECF No. 1, at 1-5. Shabazz challenges the use of force by Lieutenant Limmer and Officer Judy on February 21, 2015, and the failure of Ms. Surfus to provide him with appropriate due process prior to and during a disciplinary hearing held on February 26, 2015. For the reasons set forth below, the complaint is dismissed in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The Court must interpret the factual allegations of a pro se complaint "to raise the strongest arguments that they suggest." *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013). And although a *pro se* complaint must be construed liberally, the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

On February 21, 2015, in C-Unit at Corrigan Correctional Institution ("Corrigan"), Shabazz had an argument with Correctional Officer Judy. *See* Compl. at 3 ¶ 4 & at 7 ¶16. In connection with this argument, another correctional officer called a "signal 11 code" to summon other officers and officials to C-Unit. *See id.* at 7 ¶ 16 & Exs. A-1 and B-1 at 28-31.

Lieutenant Limmer responded to the code and ordered Shabazz to turn and face the wall, place his hands on the wall and not to move. *See id.* at 7 ¶ 16. At the same time, Officer Judy

repeatedly ordered Shabazz to put his hands behind his back.  *See id.* at 8 ¶ 20.  Because Shabazz believed that he was required to follow the last order given to him, he removed his hands from the wall and placed them behind his back.  *See id.* at 9 ¶¶ 22-23.

Lieutenant Limmer then stated: "Now I can hurt you, You dumb N . . ." and sprayed mace into Shabazz's eyes and face.  *See id.* ¶ 23.  The mace burned Shabazz's face and made it difficult for him to breath.  *See id.*  Officer Judy then pulled Shabazz's arm off of the wall in a jerking motion, place his arm behind his back and stated: "That's what you get when you F. . . with me."  *See id.*

Lieutenant Limmer ordered officers to escort Shabazz to the medical unit.  *See id.* at 10 ¶ 25.  On the way, officers attempted to have Shabazz rinse the residue of mace from his head and face by putting his head in the shower.  *See id.* ¶ 27.  Shabazz refused and requested to be "decontaminated with a solution" specifically made to rinse off the effects of mace from an individual's skin and eyes.  *See id.*

Upon his arrival in the medical department, Shabazz asked Nurse Barnes to use the solution to "decontaminate[]" him from the effects of mace.  *See id.* ¶ 28.  Nurse Barnes informed Shabazz that the solution was not available because the Department of Correction did not stock the solution in the medical department.  *See id.*  Nurse Barnes indicated that Shabazz could rinse the residue of mace from his head and face by placing his head under the faucet of the sink in the medical unit.  *See id.*  Shabazz refused to follow this suggestion because he knew that rinsing with water would only "rekindle" the effects of the mace on his skin.  *See id.*

Thereafter, Shabazz experienced three days and three nights of burning skin, pain, loss of sleep and blurry vision.  *See id.* at 11 ¶ 29.  The blurry vision caused him to suffer migraine

headaches, nausea, vomiting and loss of appetite and to avoid recreation for four months. *See id.*

During the four-month period after the incident, Shabazz experienced pain around his eyes,

mood changes, depression, a fear of dying, anxiety and emotional trauma. *See id.* at 20 ¶ 54.

On February 25, 2015, after reviewing the videotapes of the February 21, 2015 incident

and the incident report, Deputy Warden Martin (Martin) recommended further review of the

force used against Shabazz by Lieutenant Limmer. *See id.* at 12 ¶ 32 & at 39. On February 26,

2015, Warden Santiago concurred with the Martin's assessment and recommended that an

investigation be undertaken regarding the use of force by Lieutenant Limmer. *See id.* at 39. On

March 4, 2015, Acting District Two Lead Warden Jose Feliciano (Feliciano) viewed the

videotapes of the incident with Lieutenant Limmer, Martin and Captain Shebenas. *See id.* at 39.

Feliciano concluded that the use of force by Lieutenant Limmer was necessary to maintain

proper discipline and to prevent escalation of the incident. *See id.* at 12 ¶ 33.

On March 20, 2015, Shabazz filed a grievance claiming that Lieutenant Limmer had used

excessive and unjustified force against him. *See id.* at 44. On March 30, 2015, Martin denied

the grievance. *See id.* at 13 ¶ 34 & at 44. On April 2, 2015, Shabazz appealed Martin's decision.

*See id.* ¶ 35. On June 1, 2015, without reviewing the videotapes of the use of force, District Two

Lead Warden Peter Murphy denied the appeal. *See id.* at 13-14 ¶¶ 35-37 & at 48.

Lieutenant Limmer issued Shabazz a disciplinary report in connection with the incident

that occurred on February 21, 2015. *See id.* at 15 ¶ 43. The Report documenting the incident

involving the use of force by Lieutenant Limmer reflects that Shabazz received a Class A

disciplinary report for flagrant disobedience and a Class A Disciplinary Report for threats on

staff. *See id.* at 31. Defendant Ms. Surfus was Shabazz's advocate in connection with the

issuance of at least one of the disciplinary reports. *See id.* Shabazz informed Ms. Surfus that the video footage of the incident would corroborate his behavior and would demonstrate that he was not guilty of the disciplinary violation with which he had been charged. *See id.* ¶¶ 43-44. Shabazz asked Ms. Surfus to procure a copy of the video footage of the incident, to review the footage, to review all incident reports prepared in connection with the incident, to prepare her own investigation report, and to provide him with a copy of her report before the hearing. *See id. at 15-16* ¶¶ 44-45. Ms. Surfus never met with Shabazz a second time and did not attend the disciplinary hearing or submit the video footage of the incident in support of Shabazz's defense. *See id*. at 16-17 ¶¶ 46-48. In the report that she prepared in advance of the hearing, she recommended that Shabazz be found guilty. *See id.* at 18 ¶ 48 & at 52.

Shabazz participated in a disciplinary hearing on February 26, 2015. *See id.* at 50. The disciplinary hearing officer found Shabazz guilty. *See id.* at 18 ¶ 51. Shabazz appealed the disciplinary finding. *See id.* ¶ 53.

**Discussion**

Shabazz sues the defendants in their individual capacities only and seeks monetary relief. He asserts claims under the Eighth and Fourteenth Amendments of the United States Constitution. In addition, he contends that the defendants violated his rights under Article First, § 9 of the Connecticut Constitution and engaged in conduct that constituted the torts of intentional infliction of emotional distress and assault and battery.

**Eighth Amendment Excessive Force – Lieutenant Limmer and Officer Judy**

Shabazz alleges that he was attempting to comply with the orders given to him by Lieutenant Limmer and Officer Judy when Lieutenant Limmer sprayed him in the face and eyes

with mace.  Officer Judy then jerked Shabazz's left hand off the wall.

In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances.  When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim.  *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency."  *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted).  The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986)).  The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Hudson*, 503 U.S. at 7 (internal quotations and citation omitted).

### Officer Judy

The only allegation regarding a use of force against Officer Judy is that he "jerked" Shabazz's arm off  the wall just after Lieutenant Limmer sprayed Shabazz with mace.  Comp. at 9 ¶ 23.[1]  The Supreme Court has held that not "every *malevolent* touch by a prison guard gives

---

[1]  Shabazz also alleges that Officer Judy swore at him.  Allegations of verbal threats or

rise to a federal cause of action." *Hudson,* 503 U.S. at 9 (emphasis added). Furthermore, the

Second Circuit has recognized that "[n]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."

*Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973). Consequently, an allegation indicating "a

de minimis use[] of physical force" will rarely be sufficient to state a plausible constitutional

claim, unless it is of the sort of force that is "repugnant to the conscience of mankind." *Hudson*,

503 U.S. at 10-11 (internal quotation marks and citations omitted).

   The force used by Officer Judy in pulling/jerking Shabazz's arm off the wall constitutes

a *de minimus* use of force and was not sadistic or repugnant. Thus, the allegation does not state a

claim of excessive force against Officer Judy. *See Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010)

(noting that the *de minimis* use of force exception covers, for example, "[a]n inmate who

complains of a 'push or shove' that causes no discernible injury.") (quoting *Hudson*, 503 U.S. at

9); *Cox v. Fischer*, 248 F. Supp. 3d 471, 486 (S.D.N.Y. 2017) ("[T]he Court finds that Officer

Smith's alleged conduct in pushing and shoving Cox, which resulted in no pain and only

"superficial" cuts to his back, is not harmful enough to support an Eighth Amendment

excessive force claim."); *Smith v. Fischer*, No. 13-CV-6127-FPG, 2016 WL 3004670, at *13

(W.D.N.Y. May 23, 2016) ("The force used here, which amounts to a pull of an arm, was *de*

*minimis*.") The excessive force claim against Officer Judy is dismissed. *See* 28 U.S.C. §

1915A(b)(1).

   **Lieutenant Limmer**

---

harassment do not support a cognizable violation of an inmate's constitutional rights. *See*
*Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) (verbal harassment in the
absence of any appreciable injury does not state a claim under § 1983). Shabazz does not allege

Shabazz has plausibly alleged that Lieutenant Limmer used an unreasonable and unnecessary amount of force in spraying him in the face when he was not resisting but was attempting to follow the orders of Officer Judy, who was repeatedly directing him to put his arms behind his back, and that Lieutenant Limmer sprayed him with mace to cause him pain rather than for a legitimate penological purpose. *See Lewis v. Clarkstown Police Dep't*, No. 11–CV–2487, 2014 WL 1364934, at *6 (S.D.N.Y. Mar. 31, 2014) (noting that the use of pepper spray and similar chemical agents that inflict a harm of only limited duration may still be deemed excessive depending on the context in which it was used), *adhered to on reconsideration*, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014); *Adilovic v. Cty. of Westchester*, No. 08–CV–10971, 2011 WL 2893101, at *6 n. 12 (S.D.N.Y. July 14, 2011) (noting that the use of chemical agents against inmates "constitutes a significant degree of force and can amount to an excessive use of force" (citation and internal quotation marks omitted)). The Eighth Amendment excessive force claim will proceed against Lieutenant Limmer in his individual capacity.

### Eighth Amendment Excessive Force - Supervisory Liability

Shabazz does not allege that District Two Lead Wardens Murphy and Feliciano, Commissioner Semple, Deputy Commissioners Cepelak and Ellison or Deputy Warden Martin were present during or participated in the February 21, 2015 incident involving the use of mace by Lieutenant Limmer. Rather, Shabazz has named those individuals as defendants because he contends that they all supervised Lieutenant Limmer and Officer Judy in connection with the force used against him.

"It is well settled that, in order to establish a defendant's individual liability in a suit

---

that he suffered any injuries as a result of the verbal harassment by Officer Judy.

brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013). To demonstrate personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[2]

### Commissioner Semple and Deputy Commissioners Cepelack, Ellison

There is no mention of Semple, Cepelak or Ellison other than in the description of the

parties and the summary of Shabazz's claims for relief. Nor are there allegations that these three

defendants became aware of the use of force by Lieutenant Limmer after the fact.

Shabazz generally asserts that the District Two Lead Wardens Murphy and Feliciano,

Commissioner Semple, Deputy Commissioners Cepelak and Ellison and Deputy Warden Martin

failed to supervise their subordinates and agreed to continue a policy or custom of tolerating

excessive force by correctional officers through the use of mace against inmates, like himself,

---

[2] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon*, 720 F.3d at 139 (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon* "); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citation omitted). For purposes of this decision, it is assumed that the categories outlined in *Colon* remain valid.

who had a history of disciplinary infractions, assault and who followed the last order given to them. Compl. at 11-12 ¶¶ 30-31; at 21 ¶ 60; at 25 ¶ 74. Shabazz has asserted no facts in support of these allegations or the policy he describes.

In the introductory paragraphs of the fact section of the complaint, Shabazz suggests that a case filed in this court by an inmate who claimed that officers at Northern Correctional Institution had used excessive force against him during a code in 2004 would have put the defendants on notice that officers were often using excessive force against inmates during emergency codes. *Id.* at 6 ¶ 14 (citing case filed by Robert Joslyn, Case No. 3:07cv305 (JCH)). Although that case included a claim that correctional officers deployed mace into the plaintiff's cell, the circumstances in which the force was used were very different from the circumstances in this case, none of the defendants in this case were defendants in the prior case and the case settled in July 2007, without going to trial. *See id.* (ECF Nos. 1, 20, 26).

Conclusory allegations of failure to supervise and/or the existence of a policy or custom based on an excessive force case filed more than ten years before the incident involving the use of force in this action are insufficient to state a plausible claim that Commissioner Semple and Deputy Commissioners Cepelak and Ellison were involved in the use of force against Shabazz under the *Colon* categories. Accordingly, the Eighth Amendment claim of deliberate indifference due to the use of excessive force by Limmer, as asserted against Commissioner Semple and Deputy Commissioners Cepelak and Ellison, is dismissed.

### Lead Wardens Murphy and Feliciano and Deputy Warden Martin

Shabazz has alleged and attached exhibits to the complaint to demonstrate that Feliciano, Lead Warden Murphy and Martin became aware of the use of force by Lieutenant Limmer,

either through the incident report prepared and the investigation conducted in connection with the use of force or through a grievance filed by Shabazz after the use of force, but failed to take action to remedy the situation. As such, Shabazz has plausibly alleged that Warden Murphy, and Feliciano were "involved in" the use of force under the second *Colon* category. The Eighth Amendment excessive force claim will proceed against Murphy, Martin and Feliciano in their individual capacities.

**Eighth Amendment – Deliberate Indifference to Health or Safety**

Shabazz alleges that no one ever offered him the special solution designed to reduce or alleviate the painful effects of the residue of mace left on his face and in his eyes. Compl. at 10 ¶ 28. He contends that the defendants' failure to "decontaminate" him with the special solution constituted deliberate indifference and a failure to protect his health. *See id.* at 22 ¶ 64.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to provide for inmates' basic human needs including: "adequate food, clothing, shelter, [] medical care, and . . . safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

To state a deliberate indifference to health or safety claim or a conditions claim under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessity[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted).

To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

Shabazz alleges that he experienced "extreme burning pain" on his face and in his eyes from his exposure to mace. Compl. at 9 ¶ 23. Although Lieutenant Limmer directed officers to permit Shabazz to rinse his face and eyes in the shower immediately after he had been exposed to mace, Shabazz contends that Lieutenant Limmer, "based upon D.O.C. training," had to have known that rinsing with water alone will only "rekindle" the effects of mace. *Id.* at 10 ¶ 27. Shabazz declined the offer to rinse his head and eyes and chose instead to ask the nurse in the medical unit to "decontaminate" him using a special solution. *Id.* ¶ 28. The nurse indicated the solution was unavailable because the Department of Correction did not stock it in the medical unit at Corrigan. *Id.* Shabazz refused to have the nurse assist him in rinsing his head and eyes with water. *Id.*

In a conclusory statement, Shabazz contends that Commissioner Semple, Deputy Commissioners Ellison and Cepelak, Lead Wardens Murphy and Feliciano and Deputy Warden Martin knew that mace would be used against him or might be used against him but failed to stock the medical department with a "decontamination solution" to be used to "flush [his] eyes out" after being sprayed with mace. *Id.* at 22. These allegations do not state a claim of

deliberate indifference to health. Shabazz does not allege that Commissioner Semple, Deputy Commissioners Ellison and Cepelak, Lead Wardens Murphy and Feliciano or Deputy Warden Martin were aware that water might not have been effective in reducing the effects of mace on the skin and in the eyes. Thus, any claim regarding an alleged failure to stock a solution that might have been more effective in alleviating the burning sensation mace in the medical department constitutes negligence at most and does not meet the subjective prong of the Eighth Amendment standard. *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (The subjective prong of a conditions-of-confinement claim is satisfied by a showing that the defendant "acted with more than mere negligence" by, for instance, "know[ing] of, and disregard[ing], an excessive risk to inmate health or safety.") (internal quotation marks omitted). The Eighth Amendment deliberate indifference to health claim asserted against Semple, Ellison, Cepelak, Murphy, Feliciano and Martin is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Furthermore, Shabazz has asserted no facts to support his claim that Lieutenant Limmer's training would have put him on notice that the use of "water alone" to rinse off the residue of mace on the skin or in the eyes would "rekindle[] the effects of mace." Nor has Shabazz alleged that Lieutenant Limmer was or should have been responsible for ensuring the medical department was stocked with a special solution to be used to alleviate the effects of mace on an inmate's eyes and skin. Because Shabazz has not alleged facts to demonstrate that Lieutenant Limmer was deliberately indifferent to his health in connection with the attempts made to alleviate the immediate effects of his exposure to mace, this Eighth Amendment is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Due Process Claims**

13

Shabazz asserts both a Fourteenth Amendment substantive due process claim and a Fourteenth Amendment procedural due process claim. He alleges that the conduct of Ms. Surfus in connection with his disciplinary hearing was "intended to cause [him] to lose his freedom thus days of his life, and rights" and to deprive him of the opportunity to rebut the evidence against him and present a defense. Compl. at 24 ¶¶ 70-71. Shabazz alleges that Murphy, Feliciano, Semple, Cepelak, Ellison and Martin were deliberately indifferent in supervising Ms. Surfus.

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citations omitted).

### Substantive Due Process

To state a claim that an official's conduct violated substantive due process under the Fourteenth Amendment, a plaintiff must allege that a government official deprived him or her of a fundamental right and that the conduct of the official in doing so was "arbitrary ... conscience-shocking ... or oppressive in a constitutional sense." *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d. Cir. 1994) (citations omitted). Conduct that is merely "incorrect or ill-advised" does not constitute conduct that may form the basis of a substantive due process claim. *Id.* (internal quotation marks and citations omitted).

Shabazz alleges that Ms. Surfus was his assigned advocate in connection with the disciplinary reports that had been issued to him. Shabazz claims that Ms. Surfus failed to secure evidence in support of his defense to be presented at the disciplinary hearing, neglected to

14

provide him with a report of her investigation and did not appear at the disciplinary hearing. These allegations do not describe conduct that is so outrageous as to rise to the level of conscience-shocking. *See Sandin v. Connor*, 515 U.S. 472, 479 n.4 (1995) (identifying only two examples of conditions that would be shocking enough to violate a prisoner's right to substantive due process: a prison official's involuntary transfer of an inmate to a mental health hospital and a prison doctor's involuntary administration of psychotropic drugs to an inmate"); *Lombardi v. Whitman,* 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.") (internal quotation marks and alteration omitted).

Furthermore, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 272–73 (1994). Here, the substantive due process claim completely overlaps the procedural due process claim and both claims challenge the same conduct and seek to remedy the same harm. Thus, the substantive due process claim must be dismissed. *See Velez v. Levy,* 274 F.Supp.2d 444, 454 (S.D.N.Y.2003) ("[T]o the extent that the plaintiff's substantive due process claim is based on the same allegations that give rise to the plaintiff's Fourteenth Amendment procedural due process claims, the underlying allegations must be analyzed under the relevant standards for a procedural due process claim, ... rather than standards that govern a claim for substantive due process."), *aff'd in part and reversed in part on other grounds,* 401 F.3d 75 (2d Cir. 2005). Accordingly, for all the reasons set forth above, the

Fourteenth Amendment substantive due process claim asserted against Ms. Surfus, Murphy, Feliciano, Semple, Cepelak, Ellison and Martin, is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Procedural Due Process Claim

"Procedural due process ensures that the government utilizes fair procedures."  *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 409 (D. Conn. 2016) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), *aff'd*, 720 F. App'x 79 (2d Cir. 2018).  The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In *Sandin*, the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause."  *Id.* at 474. The Court explained that in the prison setting, liberty interests protected by Due Process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  The Court held that the inmate's confinement in segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  *Id.* at 486.  Thus, an inmate has a protected liberty interest only if the disciplinary sanctions caused him to suffer an "atypical and significant hardship" in comparison to "the ordinary incidents of prison life." *Id.*

Shabazz challenges the process that Ms. Surfus provided him in connection with the issuance of a disciplinary report or reports by Lieutenant Limmer. Shabazz alleges that after participating in a hearing, the disciplinary hearing officer found him guilty of at least one of the infractions with which he had been charged and that he lost his freedom. He does not otherwise describe the sanctions imposed by the hearing officer at the end of the disciplinary hearing. The statement that Ms. Surfus caused Shabazz, a convicted inmate, to lose his freedom, without more, does not demonstrate that Shabazz endured prison conditions that gave rise to a liberty interest in their avoidance. *See Davidson v. Cannon*, 474 U.S. 344, 355 (1986) ("Prison conditions are typically part of the State's legitimate restraint of liberty as a function of punishing convicted persons.") (citing *Rhodes v. Chapman,* 452 U.S. 337 (1981)). Absent a liberty interest, Shabazz was not entitled to procedural due process protections in connection with the issuance of the disciplinary report or reports by Lieutenant Limmer. Accordingly, the procedural due process claim is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

**Conspiracy**

Shabazz generally contends that the defendants conspired to violate his federal constitutional rights. *See* Compl. at 6 ¶ 12. To prevail on a conspiracy claim under section 1983, a plaintiff must allege facts to demonstrate: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). With respect to the first element, a plaintiff must show "some factual basis supporting a meeting of the minds, such that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Aho v. Anthony*, 782 F. Supp.

2d 4, 7 (D. Conn. 2011) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that the plaintiff's allegations of conspiracy were "baseless" where the plaintiff "offer[ed] not a single fact to corroborate the allegation of a 'meeting of the minds' among the coconspirators"); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.") (internal quotation marks omitted)); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009) (dismissing conspiracy claim where the plaintiff "provide[d] no evidence, absent the fact that the [i]ndividual [d]efendants worked together, that ... an agreement existed). Shabazz does not assert any facts to suggest that the defendants reached an agreement to violate his constitutional rights. Rather he alleges in a conclusory manner that the defendants were acting "in concert to inflict an unconstitutional injury upon [him] and in over[t] acts acted in furtherance of their conspiracy that caused damages." Compl. at 6 ¶ 12. This allegation insufficient to state a plausible claim conspiracy claim and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**ORDERS**

The court enters the following orders:

**(1)** The Following claims are DISMISSED . pursuant to 28 U.S.C. § 1915A(b)(1): the Eighth Amendment excessive force claim against Officer Judy, Commissioner Semple and Deputy Commissioners Cepelak and Ellison; the Eighth Amendment deliberate indifference to

health claim related to the alleged failure of the defendants to provide Shabazz with a special solution to alleviate the burning effects of mace; the Fourteenth Amendment substantive due process claim; the conspiracy claim. The Fourteenth Amendment procedural due process claim against Ms. Surfus is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The Eighth Amendment excessive force claim will proceed against Lieutenant Limmer, Warden Murphy, Deputy Warden Martin and Acting Lead Warden Feliciano in their individual capacities. The court will exercise supplemental jurisdiction over the state law claims of intentional infliction of emotional distress claim and assault and battery as well as the claim under Article First, § 9 of the Connecticut Constitution, which arise out of the same set of facts as the Eighth Amendment excessive force claim, to the extent that those state law claims are asserted against Lieutenant Limmer, Warden Murphy, Deputy Warden Martin and Acting Lead Warden Feliciano. *See* 28 U.S.C. § 1367(a).

The court will permit Shabazz twenty (20) days to file an amended complaint to assert facts in support of his Fourteenth Amendment procedural due process claim against Ms. Surfus, to wit, facts which would demonstrate a liberty interest sufficient to trigger procedural due process protections.

**(2)     Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Lieutenant Limmer, Warden Murphy, Deputy Warden Martin and Acting Lead Warden Feliciano and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any

defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)**     Defendants Limmer, Murphy, Martin and Feliciano shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

**(4)**     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

**(5)**     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)**     **The Pro Se Prisoner Litigation Office shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 3rd day of May, 2019.

____/s/_____
Kari A. Dooley
United States District Judge